UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDERSON P. THURSTON,<br><br>                                    Plaintiff,<br><br>   v.<br><br>MARCUS POLLARD, *et al.*,<br><br>                                    Defendants. | Case No. 21-CV-01578-BAS-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 2);**<br><br>**(2) DISMISSING FOURTEENTH AMENDMENT DUE PROCESS CLAIM FOR FAILURE TO STATE A CLAIM (ECF No. 1); AND**<br><br>**(3) DIRECTING USMS TO SERVE DEFENDANTS WITH COMPLAINT** |

Plaintiff Anderson P. Thurston, currently incarcerated at the California Substance Abuse Treatment Facility ("CSATF"), seeks by this action damages and injunctive relief for alleged violations of the Eighth and Fourteenth Amendments of the U.S. Constitution, pursuant to 42 U.S.C. § 1983. (*See generally* ECF No. 1, Compl.) Plaintiff proceeds *pro se*. He did not prepay the $402.00 civil filing fee required by 28 U.S.C. Section 1914(a) at

- 1 -

the time of filing and has instead filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a).  (*See* ECF No. 2.)

For the reasons stated below, the Court **GRANTS** Plaintiff's IFP Motion (ECF No. 2); **DISMISSES with prejudice** Plaintiff's "grievance procedure" claim brought pursuant to the Fourteenth Amendment for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) (ECF No. 1); and **DIRECTS** the United States Marshal Service ("USMS") to effectuate service of the Complaint upon Defendants (ECF No. 1).

## I. IFP Motion

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if they are granted leave to proceed IFP pursuant to 28 U.S.C. Section 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments." *Bruce v. Samuels*, 577 U.S. 82, 84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015).  An inmate proceeding IFP is obligated to do so regardless of whether their action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified account statement, the Court assesses an initial payment of 20% of (a) the average monthly

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which their account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119. (ECF No. 2.) This document shows that Plaintiff had an available balance of only $4.50 at the time of filing. (*See id.*)

Therefore, the Court **GRANTS** Plaintiff's IFP Motion (ECF No. 2) and declines to impose an initial partial filing fee pursuant to 28 U.S.C. Section 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it." *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to [the]m when payment is ordered."). Instead, the Court directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

## II.  Pre-Answer Screening

### A.  Background[2]

The Complaint arises out of Plaintiff's incarceration at the Richard J. Donovan Correctional Facility ("RJD"), during which Plaintiff alleges that he was housed in conditions that were noncompliant with the requirements of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.* (Compl. at pp. 9–10.) Plaintiff further alleges that the process and manner by which RJD staff handled his administrative complaints about the purportedly unconstitutional conditions of his imprisonment violated his rights.

Specifically, Plaintiff was transferred to RJD on September 18, 2020. (*Id.* 9.) Upon arrival, he was "escorted to C Facility, Building 11" in his "assigned wheelchair which was wider than 32 inches." (*Id.*)  He was "ordered" to enter the cell by Correctional Officer ("CO") Segovia. (*Id.*)  Plaintiff attempted to comply but was "unable to fit his wheelchair into the cell" and the cell was "much too small to move around in even if it could fit inside." (*Id.*)  Plaintiff asked CO Segovia to place him in an "ADA compliant cell." (*Id.*)  Plaintiff alleges that, in response, CO Segovia "threatened" him with administrative segregation ("ad-seg") if he did not enter the cell. (*Id.*)  Plaintiff alleges that he "exited his wheelchair [and] crawled into the cell on his hands and knees" for fear of the repercussions of failing to comply.[3] (*Id.*)

According to Plaintiff, he suffered over the subsequent nine months injuries due to "lack of his wheelchair use to access the sink [and] toilet facilities." (*Id.*)  In particular, Plaintiff claims that his cell lacked "appropriately placed help bars[,]" which resulted in Plaintiff being unable to "access the toilet in a reasonable [or] timely fashion" which caused him to urinate and defecate on himself "many, many times." (*Id.*)  Plaintiff also

---

[2] These facts are all taken from the Complaint.  At this stage, the Court accepts all of Plaintiff's factual allegations as true. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[3] Plaintiff alleges that at the time of his transfer to RJD, he was aware of an assertedly viral YouTube video that showed to RJD COs "savagely beating a wheelchair bound inmate." (Compl. at p. 9.)

"struggle[ed] around the cell on his hands [and] knees to clean himself [and] the cell." (*Id.*) Plaintiff claims Defendant Pollard "failed to provide the training necessary to insure the humane/constitutional and ADA compliant treatment of Plaintiff." (*Id.*)

Plaintiff filed a "CDCR Form 1824 Request for Reasonable Accommodation requesting a transfer" ("Form 1824") to more appropriate housing in which he "complain[ed] about the lack of ADA accommodations/size of the cell." (*Id.*) The grievance was heard by Defendants Anderson and Hodges on October 1, 2020, and was subsequently denied on the asserted ground that Plaintiff already was "housed appropriately in an ADA approved cell." (*Id.*) Plaintiff alleges that there was no basis for this denial. (*Id.*) Moreover, he "continued to suffer constant injuries from falls and suffer the indignities associated with the inhumanity of being forced to live in constitutionally/ADA inappropriate housing" because Defendants failed to provide the accommodations he sought pursuant to his Form 1824. (*Id.* at 9-10.) Plaintiff appealed the denial; Defendants B. Phillips and H. Mosely heard the appeal and affirmed the denial. (*See id.* at 10.)

On January 3, 2021, Plaintiff filed another Form 1824 "requesting the same reasonable accommodation of a transfer to another prison with ADA compliant housing, complaining about the inability to access to the toilet facilities in the cell, the inability to bring his wheelchair into the cell, the lack of properly placed help bars, inadequate bed area space, and the injuries/inhumanities related to being housed" in these facilities. (*Id.*) Defendant Phillips "affirmed the denial." (*Id.*)

Plaintiff alleges that he met with an attorney in May of 2021, who in turn contacted CDCR attorneys "to complain about Plaintiff's unconstitutional housing." (*Id.*) According to Plaintiff, Defendant Anderson "admitted" at a meeting "to violating Plaintiff's rights [and] promised to transfer Plaintiff to proper housing." (*Id.*) However, "Plaintiff was not transferred until June 19, 2021." (*Id.*)

The Complaint appears to lodge claims under the Eighth and Fourteenth Amendments of the U.S. Constitution against Defendants. Plaintiff seeks injunctive relief,

$500,000 in compensatory damages, $500,000 in punitive damages, and "$1,000.00 for every day [Plaintiff] spent in housing that was not ADA [compliant]." (*Id.* at 15.)

### B. Legal Standard

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). These provisions require a court to dismiss *sua sponte* a complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility

standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### C. Analysis

#### 1. Eighth Amendment Claims

"The Constitution 'does not mandate comfortable prisons[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). However, by that same token, neither does the Constitution "permit inhumane ones, and it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1991)); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) ("The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement.") (citation omitted).

Prison officials have a duty to provide to inmates with, *inter alia*, adequate shelter, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000), but not every injury that a prisoner sustains while in prison is of constitutional dimensions. *Morgan*, 465 F.3d at 1045. In order to maintain an Eighth Amendment claim, an inmate must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. *See Thomas v. Ponder*, 611 F.3d 1144, 1150–51 (9th Cir. 2010).

The Court is satisfied that Plaintiff's Eighth Amendment claims are sufficiently plead to survive the *sua sponte* pre-answer screening required under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Plaintiff alleges that the ADA-noncompliant nature of his cell created a substantial risk of, and did in fact cause, harm to his health, safety, and sanitation. Plaintiff alleges that Defendants were aware of that substantial risk, including through the formal grievance processes Plaintiff initiated pursuant Form 1824 and his informal complaints to CO Segovia. Accordingly, at this pre-answer stage, the Court finds that Plaintiff should be permitted to maintain his Eighth Amendment claims. However, Plaintiff is cautioned that "the *sua sponte* screening and dismissal procedure is cumulative

of, and not a substitute for, any subsequent Rule 12(b)(6) motion that [a defendant] may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007). Thus, this Order does not preclude the Court from later concluding that Plaintiff's Eighth Amendment claims are deficient as a matter of law.

### 2. Fourteenth Amendment Claim

On the face of his Complaint, Plaintiff also appears to allege that Defendants violated his Fourteenth Amendment due process rights because the process pursuant to which Defendants heard and adjudged Plaintiff's grievances—instituted by his two Form 1824s—was constitutionally inadequate. In particular, Plaintiff alleges that he was denied a "fair hearing" because he was unable to personally participate in the grievance process and because Defendants failed to perform a sufficient investigation into the merits of his claims, namely, by failing to visit the cell, measure its dimensions, and examine Plaintiff's wheelchair. (Compl. at p. 5.)

This cause of action must be dismissed for it is not a cognizable one. "[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (due process not violated simply because defendant fails properly to process grievances submitted for consideration). Accordingly, "[b]ecause there is no right to any particular grievance process, it is impossible for [Fourteenth Amendment] due process to have been violated by ignoring or failing to properly process prison grievances." *Daniels v. Aguillera*, No. 2:16-CV-00996-JAM-CKD P, 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018), *adopting Daniels v. Aguilera*, P, 2018 WL 558658, at *1 (Jan. 24, 2018) (Report & Recommendation).

For these reasons, the Court dismisses Plaintiff's Fourteenth Amendment due process claim. Because the due process clause does not provide a cause of action for the relief Plaintiff seeks, amendment would be futile. *Calif. Bd. of Prison Terms*, 997 F. Supp. 1303, 1308 (C.D. Cal. 1998) ("Since plaintiff has not, and cannot, state a claim containing an arguable basis in law, the action should be dismissed without leave to amend; any

amendment would be futile.") Thus, the Court's dismissal of this claim is with prejudice.

## III.   Conclusion and Orders

For the reasons set forth above, this Court:

1.   **GRANTS** Plaintiff's IFP Motion (ECF No. 2);

2.   **DIRECTS** the Secretary of the California Department of Corrections and Rehabilitation, or her designee, to collect from the full $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

3.   **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001;

4.   **DISMISSES with prejudice** Plaintiff's Fourteenth Amendment due process claims for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1);

5.   **DIRECTS** the Clerk to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendants and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each of these Defendants. In addition, the Clerk will provide Plaintiff with a certified copy of this Order, a certified copy of his Complaint, and the summons so that he may serve the Defendants. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285 as completely and accurately as possible, *include an address where these Defendants may be served*, see Civ. L.R. 4.1.c, and return it to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package;

6.   **ORDERS** the U.S. Marshal to serve a copy of the Complaint and summons upon Defendants as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ.

P. 4(c)(3);

7.   **ORDERS** Defendants, once served, to reply to Plaintiff's Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and

8.   **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon the Defendants, or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b).  Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been served on the Defendants or their counsel, and the date of that service.  *See* Civ. L.R. 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED.**

**DATED: September 29, 2021**

Hon. Cynthia Bashant
United States District Judge